Okay, the next case 514-0485 is going to be deferred, and we're going to call 515-0136 in the interest of H.H., A.H. and K.H. minors by the people of the state of Illinois, v. Scott H. And the attorney for the appellant, Mr. Foster, you may proceed. Thank you for your support, counsel. I'm court-appointed counsel for the respondent in this matter, Matt Foster. And the best analogy that I can start with is in this particular matter that people, in essence, won the race without actually finishing the race. And I'll get into that, and I'll highlight the main points in my arguments as to why I think that way. To start with, the court found my client unfit on two separate grounds, the first being repeated incarceration. Well, the statute provides that a person may be found unfit on the grounds of repeated incarceration if the incarceration has prevented the person from discharging their parental responsibilities, their parental duties, being a parent. The trial courts specifically stated in this order didn't consider that my client was incarcerated during the proceedings or who would be incarcerated until approximately 2019. So we can presumably consider he was looking at prior incarcerations, the incarcerations that are referenced in the certified convictions that were presented by the people. The only evidence presented by the people were those certified copies of the convictions. The only evidence about the repeated incarcerations were the certified copies of the convictions. My client testified as to what he was able to do and what he was able to provide for the children in between his incarcerations. There's no dispute that he was incarcerated at those periods of time. The people even went to great lengths, and then the trial court did as well in its order, on coming up with a calculation of the months, the days, the years of how long my client was incarcerated over those separate convictions. However, the statute doesn't provide that there's some mathematical equation as to what it takes to be found unfit after repeated incarcerations. In fact, it doesn't state that the simple fact of incarceration means you're going to be found unfit. The other aspect of the incarceration, the provision of discharging your parental duties and parental responsibilities is the focus of my argument on this point. My client did testify, provided testimony that he provided care for the children when he wasn't incarcerated, that he provided a home for them. He had employment. He paid taxes. He was otherwise an ordinary citizen. He also admitted to drug use in the home. That he did. So do you believe that drug use in the home while you're not incarcerated is a good parenting skill? No, I do not. The respondent acknowledged drug issues, and in fact, what was presented through the course of the proceedings is that he made an effort to seek counseling in and out of prison. He sought to remedy that situation. It was noted, and he certainly didn't dispute that. And I certainly wouldn't be condoning that as proper parenting. But yet that was between the incarcerations. It was. Right? It was. And what did your client testify that he expects to happen when he is incarcerated? Who takes care of his children? When he is incarcerated? Yeah. The previous times or the present times? No, I mean, did he testify as to, well, when I'm not incarcerated, my children will be taken care of by the state? I mean, what, as a father, what does he anticipate? No, I think the previous incarcerations, at least after all of the children were born, they were with their mother. They were still in a relationship. Now, as far as I'm anticipating, I don't think that would work. He can't be with their mother now because he beat her to a point where she is partially paralyzed and incompetent. Right. No, we don't dispute that conviction. So the mother can't take care of the children. No, I think the question was what did he anticipate happening when he was incarcerated. At the time of the hearing, he was incarcerated for that crime. He had been for a period of time. And that was part of the whether his repeated incarceration has prevented up to the date of trial anyway. Actually, Your Honor, that wasn't considered. In the trial court's order, he may mention that he was incarcerated. I thought he was going to consider the future time to 2019. Actually, the trial court said he did not consider that in his analysis. The sentence he was serving at all? No, he did not. He specifically mentioned that he was not considering that in his analysis. And that's why I made that specific point, that we can only presume he was considering the previous incarcerations as to whether he discharged his parental responsibilities. As to whether the future or where the children would be, the children are placed with relative foster parents at the present time. And he's not, nor has he, sought removal from their care in that home. But, again, the trial court made specific mention he did not consider what would happen for future. And I believe the authority also supports that. It has prevented past tense almost, not necessarily what may happen in the future. But, again, my client did present testimony that I don't believe was rebutted by the people on the grounds of the repeated incarceration. There was even a testimony provided that DCFS had placed the children in my client's care in between his periods of incarceration. And I would argue if DCFS saw fit to do that, then certainly he wasn't handicapped to such an extent to not be able to care for these children. Do you think that the basis of his most recent incarceration impacts the reflection on the past? In other words, if you beat the mother of the children to the point where she's brain damaged, do you think that DCFS would have the same viewpoint that they had during the past? That they would place these children with the man who beat the mother? I can't speculate as to what DCFS may or may not do. But that's his testimony, is that look at me. I mean, I'm going to be a good father and DCFS will probably place him with me. I mean, that's his only testimony is what happened in the past. And it seems to me that, and I know you're saying that the judge did not consider the future, but it seems like there had to be some consideration of the future. Or at least of the crime, let me put it that way, of the crime that had been committed. Well, I think we're maybe combining the analysis with the repeated incarceration and maybe the depravity. I think for purposes of the repeated incarceration, the nature of incarceration isn't necessarily part of the court's analysis for those grounds, I don't believe. I think it's more so what impact that particular conviction may have on your ability to parent. Not necessarily whether it's a forcible felony conviction, a fraud conviction, theft conviction, something of that nature. I don't think in that particular, those particular grounds, the nature of the conviction is as relevant as, say, maybe the depravity perhaps. But I'm in no way saying that during the course of proceedings it wasn't an issue. In fact, I believe my client testified that when he is released, he does expect that he would be able to be employed. He would be able to find a home, would be able to provide for his children upon his release. There's no dispute that until 2019 he wouldn't be able to do those things. But it's whether he would be able to discharge his parental duties upon his release. And back to what you were saying about whether in the future DCFS may play with him, I don't want to speculate on their part or say that they would or they wouldn't. But he did not have a clean record when DCFS placed the children with him at that time. He already had prior felony convictions whenever they did place the children with him. So whether they would or they wouldn't, I certainly don't want to speculate. But I don't think the mere fact of the convictions would rule him out because it did not in the past. Okay, and I'm not looking at the mere fact of the convictions. I think you hit it on the head. I'm looking at the depravity of the offense. Okay, and I'll move on to the next round of unfitness as the trial court saw it. For purposes of depravity, statute provides a certain number of convictions, one of which has to be relative because it's recent enough. And we're not disputing that there were enough convictions presented in the people's case. We're not disputing that there was a conviction recent enough to at least create the presumption, the rebuttable presumption of depravity. The statute provides its rebuttable presumption, not conclusive. It's not automatic. What we presented in the way of evidence during the trial court proceedings and the trial court even noted, we presented testimony sufficient to rebut that presumption. The trial court acknowledged that, that the presumption of depravity was rebutted. What I mentioned in my brief and what I would argue to today is the trial court didn't know the strength of the people's case, the strength of the evidence presented to create the presumption. The authority that I mentioned in my brief, there's no equation there, no mathematical equation about what it takes to rebut a certain presumption. But if there is a strong presumption, if there is strong weight or the evidence is overwhelming or of such a strength, well, then you need at least equivalent evidence to rebut the presumption. In this case, again, the trial court didn't make mention in his analysis or in his ruling what the strength of the people's case was. But we can only assume whether it was weak or strong, the testimony presented by the respondent was at least of equivalent value. Otherwise, it wouldn't be able to meet the presumption. It wouldn't be able to be passed. Okay, so the presumption is rebutted. Then the trial court decides the case on the evidence without benefit of the presumption. Exactly. And in doing so, couldn't the trial court consider the nature of these convictions and the fact that he beat his wife? Well, the first time he broke her jaw was one of the convictions. Then he came back after having two more kids and beat her to a point of being paralyzed and incompetent. Couldn't he consider that? He certainly could consider that. And he said he did. Okay, without a presumption, this guy is depraved. He certainly could, Your Honor, but I don't think he'd ignore the evidence that was presented by the respondent. Now, the people, and I can probably say it until I'm proven innocent. He could have considered that the respondent wasn't very credible and he wasn't going to believe everything he said, you know, and he could have determined that the nature of these convictions outweighed his testimony about what a good guy he said he was. He didn't make any mention as to his credibility. And I know the people have cited him to brief. He doesn't have to, does he? I think it would have probably been easier to maybe digest his analysis at that point, because in one breath he states the testimony that was presented was sufficient to rebut the presumption. It doesn't say whether it was strong evidence or necessarily strong evidence to rebut the people's case. So we're left indifferent. Isn't the rule that if you have a presumption, like in this case, if some evidence is introduced, the presumption goes away. Then the court decides it on the facts without the benefit of the presumption. And that's what the trial judge here explicitly said he was doing, but he said the weight of the evidence is in favor of the State's claim of depravity. And given the nature of the convictions and so forth, what's wrong with that? Well, my problem with that is, again, he recognizes not necessarily the strength of the response testimony, but he at least recognizes it. Now, if he would have perhaps said there was not enough evidence to rebut the presumption – and I recognize there is no guideline test, mathematical equation, what it takes to rebut presumption. There is no test that says this is what you need to say to rebut the presumption. But he goes so far as to at least acknowledge that. Now, if he would have maybe closely scrutinized or made some mention, and I know and I recognize he's not required to do so, but it seems to me in one breath he's saying, I recognize your testimony here. But then I'm just looking at the convictions. He didn't really – when you say he – you keep saying he looked at the convictions. What Justice Stewart referred to is exactly what the trial court did. He had the rebuttable presumption, and then your client testified that he was a good father when he was out of prison. They provided for him. And the trial judge says, well, just that testimony alone, the fact that you could provide for them, defeats the presumption. And then the court looked at all of these convictions, all of these that went into actually the nature of the conviction, burglary, aggravated domestic battery when he broke her jaw, sexual misconduct when he was over 17 and fondled the vagina of a person under 13. I mean, the court looked at all of the nature of the convictions, not just the fact that he had one, two, three, four convictions. The court discusses this in great detail and concludes that based on all of this, your client meets the definition of depravity. Right? If I may respond. You may respond. Go ahead. Well, Your Honor, what I would argue is there was sufficient evidence to at least conclude that people didn't meet their burden. Now, I understand what the court found, but then again, the burden is on the people, not necessarily on the respondent. And I would argue what was presented by the people wasn't enough to say it was a clear and convincing set of evidence to convince the court to get to that point. I understand what the convictions say, but I still believe what was presented by the people wasn't enough to get to that point. That would be my argument. Okay, thank you. You'll have a chance to give us some more information, Mr. Foster. Ms. Shanahan, how are you today? I'm fine, Your Honor. Thank you. May it please the court. Counsel. My name is Sharon Shanahan, and I represent the people of the state of Illinois. I want to start out by reading a portion of the trial court's order in this case. Only a person deficient in moral sense and rectitude would break the jaw of their daughter's mother. Only a person deficient in moral sense and rectitude would inflict permanent brain injury and loss of bodily function, that is, paralysis, on his wife and the mother of his children. His actions have resulted in lengthy prison sentences for him, which have prevented him from being a father and have caused permanent brain damage to the children's mother, which may prevent her from ever being a maternal figure in the lives of the minors again. In essence, Respondent's actions have taken both of the minors' parents away from them. You know, I gave serious consideration when I wrote this brief to just putting that paragraph in the depravity argument and stopping it, because I can't say it any better than what he said. I want to just briefly note that we have two grounds for unfitness here. If the state proved either one of them, then the finding of unfitness should stand. I think the state proved both of them. In this case, we have the very definition of repeated incarceration. 1996, sentenced to five years for criminal sexual abuse, as Justice Kate Snowden, he was over 17 and the victim was under 13. 2001, five years for burglary. 2008, six years for breaking the jaw of the children's mother. And then just three months after he finally finishes his mandatory supervised release for that case, ten years for the aggravated battery in which he put the children's mother in a coma. Well, she was in that coma for months, and she's left with permanent paralysis and permanent brain damage. So, the sole question here is whether his repeated incarcerations have prevented him from discharging his parental responsibilities for the children. The defendant's been sentenced to a total of 26 years in prison. Thanks to day-for-day credit, he's only going to have to serve, only going to have to serve 13 of those. All of the children have spent more time with someone else than they've spent with him. Hunter, who is the youngest child, has only spent five months with his father. The first few months of his life he spent in, he was born prematurely, and the first few months of his life he was in that NICU. And then he spent just a few months with his father, Caden, who is only eight months older than Hunter, that much longer. And then the oldest girl, Adriana, she spent a little bit more time, but basically she spent some time with her dad. And then off he goes to prison for a few years, and comes back four years later, and he's there for a while. And then he's gone again. These children have basically lived their life with the Olivers. And something that came up in the discussion here with opposing counsel is the time between now and 2000, I believe it's 19, when the defendant gets out of prison. The trial court did say- 2019? Pardon me? I- So it would only be five years. I don't have that number. But it's 13 years, whatever it is. Whatever it is. We got it. Yeah. It's in the future. The trial court did say that he didn't know they should consider that future time that the defendant would be away from the children. But I would note that in MMJ, a fourth district case, and in MP, which is a case arising out of this court, the courts have said when repeated incarceration prevents a father from providing emotional and financial support and stability, that child needs and deserves a father that will continue to be available. Excuse me. I misread that. The father will continue to be inavailable and inadequate as a parent because of the repeated incarceration. So I think you can consider the fact. I don't think you stop now and can't consider the fact that he's going to be gone for many more years. And I think probably the trial court erred here, but I think this court can affirm on any basis and can consider the years that are coming up that he's going to be away from these children. His categorical histories and his- Excuse me. Do you think that that's an issue in this case? Yes. Do you think that it's an issue of error in this case that the court didn't consider those upcoming years? Or is there enough in the record now to affirm based on what he did consider? I don't think it's not raised as an error because the state didn't- I mean, if this was the state somehow appealing, the state might have argued that. But that's what I'm asking. Does it make a difference? I think it's just one more factor. I guess I would- I think even without considering the years still to come in which the respondent is going to be away from these children, even without considering those years, there's enough to affirm. But I think you can't- this court can't consider those years as yet another factor. I see. But as far as what's happened thus far, we have a sort of a pattern of behavior here that I think presents us with a situation where we can believe that the respondent is going to continue to be unavailable and inadequate. And the things- we're not just talking about- respondent said, oh, well, you know, I'm a carpenter and I can- and I get work, you know, and I'll be able to do- I did that in between the first two- first few incarcerations and I can continue to do that. But financial support is not the only thing. We need emotional support. We need stability. We need- I mean, children who are raised in a family where violence is not a factor, a home where children's parents- mother is not taken away from them by the abuse of their father. I think it's interesting that when a respondent was released from prison after breaking his wife's jaw, his parole probated him to have any contact with his wife. And yet during that period, he fathers not one but two more children. So he doesn't have much respect for the law, even at that time. Justice Cage, you pointed out that he started using drugs? Yeah. And then two months after his mandatory supervised release ends, that's when he basically destroyed the life of his mother. If he'd hit her just a little bit harder, he'd kill her. And that's an almost irrebuttable presumption of unfitness. He's unable to provide a stable home. It's not just a home, it's not just a building. It's a stable home. He's not able to provide emotional support. I pointed out the MMJ in the 4th District and MC, I believe it is, in the MP, excuse me, in this district. Brandon A., also from this district, affirmed unfitness because the father had been incarcerated for nearly half his child's life and was expected to remain incarcerated. There again, another thing where the court is considering the future. For another three years. So the repeated incarceration is preventing from providing a child with necessary emotional and financial support and stability, which is required of a parent. Moving on to the depravity. Well, we've got, the state had to prove an inherent deficiency of moral sense and rectitude. That's where that quote that I started this argument from came from. We have a respondent here who has four felonies, repeated drug use, two violent crimes against the children's mother. One of them may have taken that mother away from these children forever. As far as respondent rebutting the presumption, I think, Justice Stewart, that you stated it the way that I have stated it, which is that once that presumption goes away, then you look at what is left. Respondent is almost saying that because I rebutted the presumption, now there's a new presumption that the state has to rebut. And that's not the way this works. We simply, if the defendant, if the respondent had presented nothing, then a finding of depravity could be entered just based on statutory factors. The trial court said that the presumption was rebutted. That doesn't mean, contrary to what respondent argues, that there must be at least as much evidence on his side as there is on the state's side. As I noted in my brief, you could meet the statutory factors by a minor theft, a minor possession of drugs, three very minor felonies. And that would meet the statutory factors for depravity. It wouldn't, I don't think, take very much for a father to overcome that. But once the presumption is overcome, then you do look at, okay, this is what the father says. And as you note, you can consider his credibility. You can consider, you're sitting there listening to him testify. You get an idea of where this man's coming from. And then, and this is the critical thing, then you look at not just, well, there are four felonies, but what are these four felonies? Well, I'm sorry, but felony number three is breaking his wife's jaw. And felony number four is leaving her permanently disabled. That's depraved. Did the court take judicial notice of these criminal files? I take it these were all Washington County cases, these criminal cases. And as part of the state's case in chief, they were asked, the court was asked to take judicial notice of its files. And the state presented the convictions, and the state also presented the earlier adjudicatory hearing in which the respondent admitted to using drugs at the time this happened. So that was all in front of the court. And I want to just, I don't want to, I think that the best interest argument is pretty much set forward in the state's brief. But I just got to say one thing. The big thing that is in the best interest argument is that, well, it should be a guardianship, not a termination. And he lists some reasons why. But I'm sorry, when he says that you shouldn't terminate his parental rights because you can't terminate the mother's parental rights because she's a disabled adult. Well, first of all, you can, obviously. But as I said in my brief, that's like murdering your parents and then throwing yourself on the mercy of the court because you're an orphan. So why can't Angela's parental rights be terminated? Because she's a disabled adult. Why is she a disabled adult? Because her husband beat her into a coma, causing permanent brain damage. And one question, it just wasn't clear to me. Are these children with relatives? Yes. They are with the mother's sister and her husband. So even though parental rights may be terminated, he's going to have access to his children, potentially. Well, with the mother's sister, not his sister. The foster parents said that they would provide the grandparents with visitation. I mean, allow them to visit. But there's no, to my recollection, there is nothing in the record that says anything about allowing him. Well, if his parental rights are terminated, he has no legal right to have any contact with the children. But they may allow it. Who knows? I think we're going way beyond the record to speculate. No, and I'm just wondering, it's a relative. That's what I wanted to understand. It is his wife's relative. Okay. Thank you. Rebella? Your Honor, what I would rest on is the arguments that I set forth in my brief and the arguments that I made today. I believe that with all that's considered the record, the testimony, that the people fail to meet their burden on both the fitness and the donation proceedings. And I think the trial court erred in finding that they had. And I would ask the court to reverse its decision as it is manifest way to the evidence. Thank you, Mr. Foster. I appreciate your argument. Okay. This matter will be taken under advisement and a decision will be issued by September 10th as it's an expedited case. All right. At this point, we're going to adjourn for the morning and we'll resume at 1 p.m. All rise.